F. L. Hanks *v.* P. S. Wilcox and Charlotte Coady.

## SUPREME COURT—IN EQUITY.

### F. L. HANKS *vs.* P. S. WILCOX AND CHARLOTTE COADY.

ONE of the partners of the firm having rendered extraordinary services in winding up the affairs of the concern, consequent upon the death of a partner, and during the absence of the third or remaining partner in the United States, a remuneration for extra labor, not in the nature of a commission, but as for extra expenses incurred, was allowed.

Justice ROBERTSON delivered the judgment of the Court as follows :

An order of reference was granted by the Chancellor, in this cause, directing J. E. Barnard, Esq., one of the Masters in Chancery, to take an account, in order to ascertain and report what amount, if any, is due to, or owing by, each of the parties composing the late firm of Richard Coady & Co., of Honolulu; and also to ascertain what amount, if any, is due to the complainant Hanks, in the nature of a *quantum meruit*, for extra services said to have been performed by him in closing up the business of the firm.

The Master reported in favor of the complainant's claim for compensation, as for extra services, and placed to his credit under that head, in making up the accounts, the sum of $4,938 51 (less $1,500 previously credited to Mr. Hanks on the books,) being a commission of five per cent. upon $98,770 23, the amount of business liquidated by Mr. Hanks, in winding up the

concern, from January 1st, 1859, to May 5th, 1860. To this part of the Master's report exception was taken, in due course, by the respondent Wilcox—the other respondent, as the representative of the deceased partner, admitting upon her part that Mr. Hanks had devoted much time to closing up the business, and that she considers him entitled to a reasonable recompense.

It is contended by counsel for Mr. Wilcox, that under the well understood principles which are everywhere held applicable in relation to the rights and duties of surviving partners, upon a dissolution of partnership by death, Mr. Hanks is not entitled to any remuneration whatever, for assistance rendered by him in winding up the affairs of the late firm, of which he was a member. We think there can be no doubt of the general soundness of this doctrine. Counsel for the complainant admits, that by the ordinary rule of law a partner is not allowed to charge compensation for any services rendered by him, in prosecution of the partnership business, while the partnership continues in active existence; and we think the same rule generally holds good in relation to services performed as well after a dissolution as before. It was the duty as well as the right, of the surviving partners of the late firm of Richard Coady & Co. to wind up the partnership business after the death of Mr. Coady, to close all pending operations, to settle with the creditors and debtors of the firm, and to account with the lawful representatives of their deceased partner for his share of the capital and profits. For the services rendered by the surviving partners, in so winding up the affairs of the firm, neither of them is entitled to any remuneration, unless there was an express stipulation to that effect, or unless the services performed by him were of such a nature, or were performed under such circumstances, as will necessarily raise an implied understanding that he should be paid. (See Collyer on Part., p. 192, sec. 199, and note 3 ; Story on Part., sec. 331, and note ; Kent's Com., vol. 3, p. 72, note a ; U. S. Eq. Digest, vol. 2, p. 405, secs. 389, 390, 393 ; p. 406, secs. 400, 405.)

There is no evidence in this case of an express agreement on the part of either of the respondents to pay the complainant for any services performed by him after the dissolution ; and

it is contended that he was bound by the terms of the copartnership deed to render all the assistance which he did render without extra compensation; in other words, that he merely did his duty. It appears, by reference to the articles of copartnership, that the entire real capital of the firm was furnished by Messrs. Coady & Wilcox, Mr. Hanks contributing only his time and labor. The articles contain the following clause : " It is understood that Frederick L. Hanks is not possessed of any capital, but is to devote his services as bookkeeper and accountant of the firm, and is to pass in any funds which he may hereafter receive from proceeds of voyage of bark "Black Warrior," or otherwise." It is argued that this stipulation continued binding upon Mr. Hanks after the dissolution, and that he was thereby especially bound to keep the books and accounts until the affairs of the firm were finally closed. In our opinion this is not sound. Mr. Coady died in the month of June, 1858, and his interest in the concern ceased, by express provision of the articles, on the first day of January, 1859, which is regarded, for the purposes of this proceeding, as the time of final dissolution. At that date, we hold, the stipulation which bound Mr. Hanks to keep the books and accounts, and made his skilled labor in that behalf a substitute for the contribution of money capital, ceased to be binding upon him. Any stipulation contained in the articles, engaging either of the partners to conduct a particular part of the business, must have ceased to be binding after the dissolution, unless the contrary was expressed or could be clearly implied. The chain once broken, the separate links, or members, were dismissed to their rights under the law merchant, and Mr. Hanks is as much entitled to the benefit of this consideration as either of the other partners. It then became the common duty of both the surviving partners alike, under the rules of law which govern the position in which they were placed, to close up the business of the firm ; and neither of them was bound to take upon himself exclusively the discharge of any particular branch of the necessary operations. To prove this, we may suppose that the partnership had become dissolved by the death of Mr. Hanks, instead of Mr. Coady. In that case Mr. Hanks' representatives could not have been deprived of his share of the profits on the ground that he had

not fulfilled his part of the partnership agreement. So, neither of the survivors, in particular, would have been bound more than the other to devote himself to the keeping of the books and closing up the accounts. The same result, legally speaking, must follow upon a dissolution caused by the death of any of the partners. That result could only have been prevented in the present instance by an express stipulation to the effect that, if the partnership should be dissolved by the death of any partner, other than Mr. Hanks, he should still continue to keep the books and accounts until the affairs were finally closed.

The question is then, did Mr. Hanks render extraordinary assistance in the winding up of the partnership business, and as there was no express agreement to pay him for extra services, did he perform services of such a nature, or under such circumstances, as create an implied agreement that he should be paid therfor ?  It appears in evidence that Mr. Coady, the leading member of the firm, died suddenly at sea, on his way to San Francisco, on the 18th of June, 1858, within six months after the commencement of the partnership, at which time the other partner, Mr. Wilcox, was also absent from Honolulu on a visit to the United States. Mr. Hanks continued to be the only member of the firm here until the return of Mr. Wilcox in the middle of September following. From the final dissolution of the partnership on the 1st of January, 1859, up to August 30th of the same year, Mr. Hanks continued to devote his time to the winding up of the business, Mr. Wilcox having again left for the United States in the month of April. On the 30th of August, 1859, Mr. Hanks formed a new connection in business, but still continued to bestow such attention as was necessary to closing up the affairs of R. Coady & Co. till the month of May, 1860. The business carried on by Richard Coady previous to the formation of the partnership, became merged in that of the firm, increasing the labor thrown upon Mr. Hanks, in closing accounts and effecting settlements, and it probably required as much time and labor to wind up the partnership at the end of one year, as if it had lasted four years, as originally contemplated. It is said that in becoming a member of the firm under the stipulation already referred to Mr. Hanks must have understood what was expected of him,

F. L. Hanks *v.* P. S. Wilcox and Charlotte-Coady.

and that he took the risk of the partnership being determined before the time limited in the articles. This is true ; but we have already stated that that stipulation died with the partnership itself, and it is clear that had Mr. Hanks merely done what the law required of him, after the dissolution, a receiver must have been appointed at the expense of the estate, or else Mr. Wilcox would have been under the necessity of remaining constantly in Honolulu. In our opinion, therefore, Mr. Hanks did render extraordinary assistance, under such circumstances as make his claim for compensation a fair subject of consideration for the Court.

The last question to be determined is, what amount of compensation shall be allowed ? It is objected by counsel for the contesting respondent, that Mr. Hanks' remuneration should not be measured by a commission. We think the objection is a good one. The same mode of payment which might have been considered proper, in the case of a stranger acting as receiver, should not be adopted in paying Mr. Hanks, a member of the firm. It was his duty to assist in closing up the business of his firm, and the special reward that is to be allowed him should not exceed a bare remuneration for his extra labor, it being in the nature of an allowance for extra expenses incurred. It has been argued with much force, that when Mr. Hanks charged the concern with fifteen hundred dollars, as paid to himself, on the 14th of November, 1859, for services rendered after the dissolution, he himself measured the value of those services. From the wording of the entry, as it appears upon the books, we are inclined to think that Mr. Hanks, at that time, did look upon the sum so charged, as all that he should receive. But apart from this consideration, the Court feels that in allowing him that amount, it does what is just and equitable towards all parties interested.

The exception to the master's report is therefore sustained, to that extent, and the sum of $1,500 only will be credited to the complainant, under the head of extra services.

Mr. Montgomery, for complainant.

Mr. Harris, for Mr. Wilcox.

Mr. Austin, for Mrs. Coady.